IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY GOLDSTEIN and | : | |
| MELISSA GOLDSTEIN | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| vs. | : | NO. 09-826 |
| | : | |
| BISON BEDE LIMITED, | : | |
| | : | |
| UNITED LIFT SERVICE | : | |
| COMPANY, INC., and | : | |
| | : | |
| JASON WARNER, | : | |
| Defendants. | : | |

DuBOIS, J.                                             August 27, 2009

**M E M O R A N D U M**

**I.    Background**[1]

The instant suit arises out of the malfunctioning of a "curved rail stair lift" that plaintiffs, Larry Goldstein and Melissa Goldstein, purchased from defendant United Lift Service Company, Inc. ("United Lift") and that was manufactured by defendant Bison Bede Limited ("Bison"). Plaintiffs allege that defendant Jason Warner ("Warner") is a service manager for Bison HomeCare and "a Bison Bede Limited employee . . . ." (Compl. ¶¶ 4, 16.) In the Complaint, plaintiffs assert the following claims against defendants: an unspecified claim for either breach of contract or breach of express warranty (Count I); false imprisonment (Count II); breach of the Implied Warranty of Merchantability and breach of the Implied Warranty of Fitness for a Particular Purpose (Count III); and violations of the Unfair Trade Practices and Consumer

---

[1] The facts are taken from the Complaint and are presented in the light most favorable to plaintiffs.

1

Protection Law ("UTPCPL") (Count IV).

Plaintiffs purchased a Bison "Contour Elite" curved rail stair lift (the "chair lift") from defendant United Lift on December 27, 2003. (Id. ¶ 6.) Thereafter, defendant United Lift installed the chair lift. (Id. ¶ 7.) On February 2, 2004, plaintiffs entered into a service contract with defendant United Lift, and on December 6, 2006, plaintiffs "entered into a yearly maintenance agreement for the period of December 2006 through December 2007." (Id. ¶¶ 9–10.) The chair lift began malfunctioning on September 19, 2007. (Id. ¶ 11.) Despite an attempted repair by defendant United Lift on September 22, 2007, the chair lift continued to malfunction and was inoperable after September 28, 2007. (Id. ¶ 12–13.) The chair lift required replacement of "a circuit board." (Id. ¶ 14.)

Plaintiffs allege that they "made various calls" to defendant United Lift. (Id. ¶ 14.) Defendant United Lift stated that the circuit board "had to be ordered from [d]efendant Bison." (Id. ¶ 14.) "[W]hen informed [by defendant United Lift] that no such circuit board could be obtained," plaintiffs attempted to contact defendant Bison directly, and after "failing to obtain parts," plaintiffs "[were] directed to" defendant Warner, who stated that "the necessary parts were not available in the continental United States." (Id. ¶ 15–16.) "Unable to obtain parts for the said repair," plaintiffs replaced the chair lift at a cost of $15,299. (Id. ¶ 17–18.)

Presently before the Court is the Motion to Dismiss of defendants Bison and Warner, the only defendants which have appeared in the case.[2] For the reasons stated below, the Court grants the Motion to Dismiss of defendants Bison and Warner with respect to all four counts of the Complaint.

---

[2] Plaintiffs reported that they have been unable to serve the Summons and Complaint on the third defendant, United Lift.

## II.     Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion.  In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach" which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950. Under this approach, a district court first identifies those factual allegations which constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . —to

determine" whether it states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950; Twombly, 550 U.S. at 565.

### III. Discussion

#### A. Count I - Unspecified Claim

In their Motion to Dismiss, defendants Bison and Warner correctly point out that in the Complaint, plaintiffs fail to identify the cause of action they assert in Count I. (Defs.' Mot. 3.) Rather, in Count I plaintiffs allege that they were required to seek a replacement chair lift because "the necessary parts [to repair the chair lift] were not available in the continental United States." (Compl. ¶ 16.) Specifically, plaintiffs aver that defendant United Lift referred them to defendant Bison, who then referred them to defendant Warner, all to no avail.

Defendants Bison and Warner argue that in Count I, plaintiffs seek to raise a breach of contract claim against them. (Defs.' Mot. 4.) They contend that such a claim must fail because: 1) there was no contract between defendants Bison and Warner and plaintiffs; and 2) even if there was a contract, any breach of contract claim would be untimely because the four-year statute of limitations for breach of contract claims has expired. (Id. 4–5.) Plaintiffs counter that they have a contractual relationship with defendants Bison and Warner because they "received a warranty directly from [d]efendant Bison . . . and dealt with [its] authorized dealer/representative . . . ." (Pls.' Resp. ¶ 5.) The Court will address these two theories of liability—breach of warranty and breach of contract—in turn.

First, to the extent that Count I seeks to assert breach of an express warranty[3] against defendants Bison and Warner, that claim fails. At the motion to dismiss stage, the Court may, in

---

[3] Plaintiffs asserted claims for breach of implied warranties under Count III, which is addressed in Part III.C., *infra*.

its discretion, consider materials outside of the pleadings. Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) ("Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss."). Plaintiffs attach to their Response to defendants' Motion to Dismiss a copy of the "Certificate of Warranty" allegedly provided by defendant Bison. (Certificate of Warranty, Ex. A to Pls.' Resp.) Assuming *arguendo* its validity, the Certificate of Warranty makes clear that the warranty provides for replacement of parts within twelve (12) months of purchase. Thus, the express warranty covered part replacements until December 27, 2004. Since the malfunction occurred in September 2007, defendants Bison and Warner had no obligation under the express warranty to replace any parts.[4]

Second, to the extent that Count I seeks to assert a breach of contract claim against defendants Bison and Warner, that claim also fails. "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." Electron Energy Corp. v. Short, 408 Pa. Super. 563, 567 (1991). Plaintiffs acknowledge that they purchased the chair lift through defendant United Lift and entered into service and maintenance contracts with it for upkeep of the chair lift. (Compl. ¶¶ 6–10.) The Complaint does not allege a contractual relationship with defendants Bison and Warner through their approval of defendant United Lift as an authorized agent. Moreover, in their Response to defendants' Motion to Dismiss, plaintiffs cite no authority in support of their position that a contractual relationship was established through use of authorized dealers. Accordingly, the Court rejects this argument and grants

---

[4] The Court notes that defendant Bison's "Contour Elite" brochure, which is attached to plaintiffs' Response states: "The Contour Elite is covered by a full 24 month, complete parts warranty." (Brochure, Ex. B to Pls.' Resp.) Without speculating on the reason for the discrepancy between the Brochure (24-month warranty) and the Certificate of Warranty (12-month warranty), the Court notes that even if the 24-month warranty applied, it would have expired by December 2005, nearly two years before the malfunction in the chair lift allegedly occurred.

defendants' Motion to Dismiss with respect to Count I of the Complaint.

      **B.**      **Count II - False Imprisonment**

Plaintiffs aver in Count II of the Complaint that because the chair lift was not operating, "plaintiff Melissa Goldstein was in effect a prisoner in her own household being limited to the floor in which she was located unless transported from one floor to another by trained medical crews." (Compl. ¶ 22.) Although plaintiffs do not explicitly refer to Count II as a false imprisonment claim, they concede that it is in their Response to the Motion to Dismiss. (Pls.' Resp. ¶ 12.)

Under Pennsylvania law, "an actor is liable for false imprisonment if: (1) she acts intending to confine a person within boundaries fixed by the actor; (2) her act directly or indirectly results in such confinement of that person, and (3) the person confined is conscious of the confinement or is harmed by it." Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 319 (E.D.Pa. 1998); see also Gagliardi v. Lynn, 446 Pa. 144, 148 n.2 (1971) (reciting these three elements, as defined in the Restatement (Second) of Torts (1965), as the essential elements of a cause of action for false imprisonment); Gilbert v. Feld, 842 F. Supp. 803, 821 (E.D. Pa. 1993) (stating that under Pennsylvania law, false imprisonment consists of "the detention of the person" and "the unlawfulness of that detention").

The Court concludes that plaintiffs fail to state a claim for false imprisonment because there are no factual allegations that would support either an intent by defendants Bison and Warner to confine plaintiff Melissa Goldstein or that their actions resulted in her confinement. The Court notes that although plaintiff Melissa Goldstein alleges that she was unable to ascend or descend the staircase in her home because of the non-functioning chair lift, such limitation in her movement does not amount to intentional confinement that is required to state a claim for

false imprisonment. Accordingly, the Court grants defendants' Motion to Dismiss with respect to Count II of the Complaint.

### C. Count III - Breach of Implied Warranties

In Count III of the Complaint, plaintiffs allege a breach of both the Implied Warranty of Merchantability, under 13 Pa. C.S.A. § 2314, and the Implied Warranty of Fitness for a Particular Purpose, under 13 Pa. C.S.A. § 2315.

Defendants Bison and Warner argue that plaintiffs' claims for breach of warranty are barred by the applicable four-year statute of limitations. (Defs.' Mot. 5 (citing 13 Pa. C.S.A. § 2725(a)).) According to defendants Bison and Warner, a breach of warranty occurs at the time of tender of delivery of the good, which in this case occurred on or around December 27, 2003. (Id.) Thus, plaintiffs had four years from that date—on or about December 27, 2007—to commence the action. Since plaintiffs filed suit on February 26, 2009—over a year after the limitations period expeired—defendants Bison and Warner assert that the claim is untimely and must be dismissed. (Id.)

The Court concludes that the argument of defendants Bison and Warner on this ground is correct. Under Pennsylvania law, the statute of limitations for breach of warranty claims is four years. 13 Pa. C.S.A. § 2725(a); 42 Pa. C.S.A. § 5525(2); Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 831 (E.D. Pa. 2001). Section 2725(b) provides: "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." 13 Pa. C.S.A. § 2725(b). Moreover, "[a] breach of warranty occurs when tender of delivery is made . . . ." Id. That is, "the statute of limitations will begin to run on the date of sale of the product." Floyd, 159 F. Supp. 2d at 831. The chair lift at issue in this case was purchased on or about December 27, 2003, and the four year statute of limitations period expired on or

7

about December 27, 2007. Since plaintiffs' filed their Complaint on February 26, 2009, any claims for breach of warranty are time-barred and must be dismissed.

In opposition to the Motion to Dismiss, plaintiffs argue that an exception in § 2725(b) applies, which extends the limitations period where the warranty "explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." 13 Pa. C.S.A. § 2725(b). In such a situation, "the cause of action accrues when the breach is or should have been discovered." Id. According to plaintiffs, since the breach was discovered in September 2007, the action was commenced within the four-year limitations period. (Pls.' Resp. ¶ 16.)

Contrary to plaintiffs' contention, however, this case does not involve a warranty that "explicitly extends to future performance of the goods." Indeed, "[i]mplied warranties of merchantability and fitness for a particular purpose cannot explicitly extend to future performance." Antz v. GAF Materials Corp., 719 A.2d 758, 760 (Pa. Super. 1998) (citing Nationwide Insurance Company v. General Motors, 533 Pa. 423, 433–35 (1993)); Int'l Plastics & Equip. Corp. v. HPM, A Taylor's Co., No. 07-CV-1053, 2008 WL 3244070, *9 (W.D. Pa. Aug. 7, 2008) ("An implied warranty of merchantability is created not by contract language but by operation of law, . . . and implied warranties, by their very nature, cannot 'explicitly' extend to future performance.") (citation omitted). Accordingly, the Court rejects plaintiffs' argument on this ground and grants defendants' Motion to Dismiss with respect to Count III of the Complaint.

    **D.**    **Count IV - Unfair Trade Practices and Consumer Protection Law**

In Count IV of the Complaint, plaintiffs allege that "[t]he omissions of the defendants jointly, and severally violate the Unfair Trade Practice Act [sic] of Pennsylvania pursuant to 73 PS § 201-1, et sec." (Compl. ¶ 32.) Although plaintiffs incorporate by reference all of the

averments previously made in the Complaint, they do not specifically identify which factual allegations support their UTPCPL claim asserted in Count IV. (See id. ¶ 31.) Moreover, as defendants Bison and Warner correctly point out, plaintiffs do not specify in the Complaint the sections of the UTPCPL allegedly violated by defendants. (Defs.' Mot. 6 ("Plaintiff's [sic] Complaint leaves Bison guessing as to which section of the UTPCPL it allegedly violated.").)

Pennsylvania's UTPCPL makes it unlawful for individuals or businesses to engage in unfair or deceptive acts or practices. 73 Pa. Cons. Stat. § 201-3. The purpose of the UTPCPL is to ensure fairness in market transactions and to place sellers and consumers on equal ground. Com. v. Monumental Properties, Inc., 459 Pa. 450, 457–58 (1974); see also Gilmour v. Bohmueller, No. 04-CV-2535, 2005 WL 241181, *11 (E.D. Pa. Jan.1, 2005). The statute is to be liberally interpreted in order to effectuate its purpose. See Monumental Properties, 459 Pa. at 457–58; Cavallini v. Pet City and Supply, 848 A.2d 1002, 1004 (Pa. Super. 2004).

Under the statute, a variety of actions constitute "unfair or deceptive acts or practices." In their Response to the Motion to Dismiss, plaintiffs argue that §§ 201-2(4)(x), (xiv), and (xvi) are at issue in this case, but give no further explanation of how those provisions are alleged to have been violated. (Pls.' Resp. 7–8.) Rather, the gravamen of plaintiffs' allegations against defendants Bison and Warner is that they did not make replacement parts for the chair lift available within the United States. (Id. at 8 ("Here, the within [d]efendants failed to maintain and make available for the [p]laintiff's [sic] and other similarly situated persons, repair parts for a stair lift.").) The Court concludes that based on such allegations, plaintiffs have failed to state a claim under §§ 201-2(4)(x), (xiv), and (xvi) of the UTPCPL, and Count IV of the Complaint is dismissed.

Section 201-2(4)(x) prohibits "[a]dvertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity." § 201-2(4)(x). However, nowhere in the Complaint do plaintiffs mention any advertising conducted by defendants Bison or Warner, let alone plead facts alleging that they advertised their product in a manner inconsistent with § 201-2(4)(x). The Court thus rejects this argument.

Section 201-2(4)(xiv) bans "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." § 201-2(4)(xiv). The Court notes that the Complaint makes no mention of any written guarantee or warranty made by defendants Bison or Warner. On this ground alone, this argument must be rejected. See Seldon v. Home Loan Services, Inc., No. 07-CV-4480, 2009 WL 2394182,* 12 (E.D. Pa. Aug. 4, 2009) (dismissing claim under § 201-2(4)(xiv) where "the complaint contain[ed] no factual allegations about a warranty or its terms"); Solarz v. DaimlerChrysler Corp., 2002 WL 452218, *13 (Pa. Com. Pl. 2002) (holding that plaintiffs stated a claim under § 201-2(4)(xiv) where plaintiffs "specifically alleged an improper performance of a contractual obligation under the express warranty").

Notwithstanding plaintiffs' failure to mention a written guarantee or warranty in the Complaint, even if the Court considers the terms of the express warranty allegedly given by defendant Bison—as the Court did in Part III.A., *supra*—the Certificate of Warranty provides for replacement of parts within twelve (12) months of purchase (or within 24-months of purchase if the Court considers the Brochure appended to plaintiffs' Response to defendants' Motion to Dismiss). Thus, assuming *arguendo* that defendants Bison and Warner failed, as plaintiffs allege, to make replacement parts for the chair lift available within the United States in September 2007,

10

such conduct does not violate the terms of the warranty because, at the latest, the warranty expired on December 27, 2005—24 months after the chair lift was purchased and 21 months before the alleged malfunction occurred. Plaintiffs' argument under § 201-2(4)(xiv) of the UTPCPL is rejected for this additional reason.

Finally, § 201-2(4)(xvi) makes it unlawful to "[m]ak[e] repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing." § 201-2(4)(xvi). "'Under section 201-2(4)(xvi), a plaintiff must show that a defendant agreed in writing to perform a contract with a certain quality and that the work was substandard and inferior.'" Johnson v. Chase Manhattan Bank, USA N.A., No. 07-CV-526, 2007 WL 2033833, *7 (E.D. Pa. July 11, 2007) (quoting DiLucido v. Terminix Int'l, Inc., 676 A.2d 1237, 1241 (Pa. Super. 1996)). Where a Complaint does not allege that a defendant "made any repairs, improvements or replacements on [plaintiffs'] property" or "contracted to perform any such services," it fails to state a claim for which relief can be granted under the UTPCPL. See id. In this case, plaintiffs' Complaint is devoid of any allegations concerning repairs or replacements that defendants Bison and Warner "agreed to in writing" as required under the UTPCPL. Thus, plaintiffs' argument under § 201-2(4)(xvi) must be rejected.

Accordingly, the Court grants defendants' Motion to Dismiss with respect to Count IV of the Complaint.

## IV.   Conclusion

For the foregoing reasons, the Motion to Dismiss of defendants Bison and Warner is granted with respect to all four counts in the Complaint. An appropriate Order follows.