# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY GOLDSTEIN; <br> MELISSA GOLDSTEIN, <br>               Plaintiffs <br>   <br> v. <br>   <br> UNITED LIFT SERVICE COMPANY, INC., <br>               Defendant. | CIVIL ACTION <br>   <br>   <br>   <br> NO. 09-826 |

**DuBOIS, J.**                                                                                                  October 22, 2010

## M E M O R A N D U M

## I. Introduction

This case arises out of the malfunctioning of a "curved rail stair lift" that plaintiffs, Larry Goldstein and Melissa Goldstein, purchased from defendant United Lift Service Company, Inc. ("United Lift"). In the Complaint, plaintiffs assert the following claims against defendant: breach of contract (Count I); false imprisonment (Count II); breach of the Implied Warranty of Merchantability and breach of the Implied Warranty of Fitness for a Particular Purpose (Count III); and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count IV). This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

The Complaint was properly served on defendant on September 29, 2009. Defendant failed to respond to the Complaint as required by law. Accordingly, a default was entered by the Clerk pursuant to Federal Rule of Civil Procedure 55(a) on March 4, 2010.

The matter was presented to the Court on Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), and on March 31, 2010 the Court conducted a hearing

to determine damages. Notwithstanding notice to defendant, defendant did not appear at the hearing. At the hearing, plaintiffs Larry Goldstein and Melissa Goldstein both testified and presented testimony from Audrey Welsh, a licensed practical nurse who provided care to Melissa Goldstein at times relevant to this action. Plaintiffs also submitted nine exhibits at the hearing in support of their Motion for Default Judgment. (Exs. P-1 to P-8, P-10.) Following the hearing, plaintiffs submitted proposed findings of fact and conclusions of law.

For the reasons set forth in the following Findings of Fact and Conclusions of Law, the Court finds that (1) United Lift breached its maintenance agreement with plaintiffs, (2) United Lift violated the UTPCPL by committing the unlawful practices described in §§ 201-2(4)(xiv) and (xvi) of the statute, and (3) plaintiffs are entitled to recover an award of consequential damages in the amount of $40,299.

## II.  Findings of Fact

### A.  Background

Plaintiffs purchased a Bison "Contour Elite" curved rail stair lift (the "chair lift") from defendant United Lift in December 2003. (Hr'g Tr. at 6.) Final acceptance, turnover, and installation of the chair lift was made on December 29, 2003. (Ex. P-1.) Included with the purchase of the chair lift was an extended maintenance agreement effective for one year from the date of installation. (Id.) By letter dated February 2, 2004, United Lift enclosed information describing and advertising its "Maintenance Program Agreement and a "Warranty Statement" describing, *inter alia*, the labor warranty included with plaintiffs' purchase of the chair lift. (Exs. P-2 to P-4.) Plaintiffs made annual payments to United Lift extending the maintenance agreement on a yearly basis, and on January 16, 2007, plaintiffs received confirmation of their

extension of the maintenance program agreement through December 28, 2007. (Exs. P-5 to P-7; Hr'g Tr. at 6-7, 9.)

The chair lift began malfunctioning on September 19, 2007. (Hr'g Tr. at 9.) Plaintiffs made an emergency call to United Lift on that date but did not hear from United Lift until September 21, 2007. (Id. at 11-12.) On September 22, 2007, after determining that the chair lift's "charging shoe" had malfunctioned, a United Lift technician temporarily repaired the chair lift by wedging an old sneaker belonging to Larry Goldstein into the unit. (Id. at 12-14.) The chair lift again malfunctioned and became completely inoperable on September 25, 2007. (Id. at 14.) Plaintiffs then called United Lift, but were unable to reach the company until October 2, 2007, when they were notified that United Lift had not yet ordered a new charging shoe, but would do so that day. (Id.) A United Lift technician installed the new charging shoe on October 6, 2007 and advised plaintiffs that the battery would automatically charge for six to seven hours before the chair lift would be operable. (Id. at 15.) On October 7, 2007, after the battery was charged, plaintiffs tested the chair lift and discovered that it was inoperable, and again contacted United Lift. (Id.) United Lift tried but failed again to repair the chair lift on October 13 and 18, 2007. (Id. at 15-16.)

Plaintiffs called the company's vice president, Pat McDaniels, on October 23 and 24, 2007, but were unable to reach her or leave a message in her voicemail box, which was full. (Id. at 16-17.) Plaintiffs also sent an email to United Lift's general sales address on that date, which was returned to sender. (Id.) Unable to reach United Lift on their own, plaintiffs sought the assistance of a local television news station, which was able to reach United Lift immediately. (Id. at 19.) United Lift informed plaintiffs that it needed to obtain a new part for the chair lift,

3

that it did not know how long it would take to obtain the part, and that United Lift would not be able to make any guarantee that the new part would actually fix the chair lift. (Id.)

Having received no evidence or assurance from United Lift that it would be able to repair the chair lift, plaintiffs unsuccessfully sought the services of other Bison chair lift distributors, who refused to repair the chair lift and informed plaintiffs that only the distributor from whom they purchased the chair lift—United Lift—would be able to make the necessary repairs. (Id. at 18-19.) Left without a functioning chair lift and faced with uncertainty regarding whether United Lift would ever repair the chair lift, plaintiffs purchased a new chair lift from Mobility Express on October 24, 2007, at a cost of $15,299. (Id. at 20; Ex. P-8.) Because of the time required to fabricate the new chair lift, it was not installed until December 2, 2007. (Hr'g Tr. at 21, 50.)

**B.     Effects on Plaintiff Melissa Goldstein**

Plaintiffs' home is a two-story home with a powder room on the first floor and bathing facilities and bedrooms limited to the second floor. (Hr'g Tr. at 4, 11.) Larry Goldstein originally purchased the chair lift to accommodate his wife during her recovery from a severe leg injury. (Id. at 4.) Larry Goldstein's daughter, Melissa Goldstein—who was age 40 at the time of the March 31, 2010 hearing—was 18 years of age when she was diagnosed with lupus. (Id. at 26-27.) By 2006, Melissa Goldstein had moved in with her parents due to the worsening of her symptoms and she became the primary user of the chair lift. (Id. at 26-27, 39.) The chair lift was Melissa Goldstein's sole means of ascending and descending the stairs and thus for leaving the house. (Id. at 10-11, 22.)

After the chair lift stopped functioning on September 25, 2007, and before the new Mobility Express chair lift was installed on December 2, 2007, Melissa Goldstein was unable to

4

move between the first and second floors without the assistance of trained emergency medical technicians ("EMTs"). (Id. at 22-23.) In the six and a half months prior to September 25, 2007, Melissa Goldstein was under the care of nine physicians, underwent regular and periodic medical testing, and averaged four doctor visits per month. (Id. at 28-29.) However, after the chair lift stopped functioning on September 25, 2007, Melissa Goldstein was unable to leave the second floor of her home and averaged only two physician visits per month, missing many scheduled medical tests and doctor appointments—including appointments with her rheumatologist, gastroenterologist, and pain specialist. (Id. at 28-30.) As a result of these cancelled appointments, Melissa Goldstein experienced increased pain. (Id. at 30.) When a medical appointment was necessary and could not be postponed, plaintiffs would call 9-1-1, which would dispatch EMTs to carry Melissa Goldstein down to the first floor. (Id. at 23.) Plaintiffs utilized EMT services sparingly, and other than the few times she left the house for doctor visits, Melissa Goldstein did not leave the second floor between September 25, 2007 and December 2, 2007. (Id. at 33-34.)

Melissa Goldstein suffered from "deep depression" because of her inability to descend the stairs on her own. (Id. at 41.) Having to call emergency services every time she needed to leave the house was embarrassing and reinforced her feeling of being disabled. (Id. at 36.) She was unable to participate in Thanksgiving dinner with her family that year and was unable to participate in activities she normally enjoyed, such as riding her scooter to the library or park, or attending book club meetings. (Id. at 34-35.)

On the basis of the evidence and testimony presented by plaintiffs, the Court finds that United Lift's failure to repair the chair lift left Melissa Goldstein with no means to ascend or

5

descend the stairs without the assistance of trained EMTs for over two months, caused plaintiffs significant inconvenience, and required the purchase of a new chair lift.

**III.     Conclusions of Law**

    **A.     Count I - Breach of Contract**

Count I is unspecified in the Complaint.  However, plaintiffs' counsel clarified at the March 31, 2010 hearing that it is a claim for breach of the annual maintenance agreement in effect through December 28, 2007.  (Hr'g Tr. at 48.)

Pennsylvania law recognizes that "[o]ne who undertakes any work impliedly assumes that he will do it with ordinary skill and care, and becomes liable to make compensation for not doing so." Huling v. Henderson, 161 Pa. 553, 560 (1894).  In the construction context, courts have found an implied warranty to perform services in a workmanlike manner in order to protect the party "who stands in a position of unequal knowledge." Pittsburgh Nat. Bank v. Welton Becket Assocs., 601 F.Supp. 887, 892 (W.D. Pa. 1985); see also Metro. Edison Co. v. United Eng'rs & Constructors, Inc., 4 Pa. D. & C.3d 473, 482-83 (Pa. Ct. Com. Pl. 1977).  The same rationale applies in this case. United Lift—the party with superior knowledge—held itself out as competent to repair plaintiffs' chairlift.  The company represented that its maintenance services would provide plaintiffs with "Factory trained Service Technicians," "reliable service," "PEACE OF MIND," and "trouble-free operation for the user(s)."  (Ex. P-3.)  Yet after repeated service calls and visits to plaintiffs' home over a period of more than one month, United Lift was unable to repair or determine the source of the chair lift's malfunction.  The Court finds that, having failed to competently service the chair lift, United Lift is liable to plaintiffs for breach of the maintenance contract.

### B. Count II - False Imprisonment

Plaintiffs aver in Count II of the Complaint that because the chair lift was not operating, "plaintiff Melissa Goldstein was in effect a prisoner in her own household being limited to the floor in which she was located unless transported from one floor to another by trained medical crews." (Compl. ¶ 22.) Although plaintiffs do not explicitly refer to Count II as a false imprisonment claim, plaintiffs' counsel labeled it as such during the March 31, 2010 damages assessment hearing before the Court. (Hr'g Tr. at 48.)

Under Pennsylvania law, "an actor is liable for false imprisonment if: (1) she acts intending to confine a person within boundaries fixed by the actor; (2) her act directly or indirectly results in such confinement of that person; and (3) the person confined is conscious of the confinement or is harmed by it." Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 319 (E.D.Pa. 1998); see also Gagliardi v. Lynn, 446 Pa. 144, 148 n.2 (1971) (reciting these three elements, as defined in the Restatement (Second) of Torts (1965), as the essential elements of a cause of action for false imprisonment); Gilbert v. Feld, 842 F. Supp. 803, 821 (E.D. Pa. 1993) (stating that under Pennsylvania law, false imprisonment consists of "the detention of the person" and "the unlawfulness of that detention").

The Court concludes that plaintiffs fail to establish a claim for false imprisonment because the facts do not support a finding of an intent by United Lift to confine Melissa Goldstein. The Court notes that although Melissa Goldstein was unable to ascend or descend the staircase in her home because of the non-functioning chair lift, such limitation in her movement does not amount to the intentional confinement required to prove a claim for false imprisonment. Accordingly, the Court concludes that plaintiffs are not entitled to relief with respect to Count II

of the Complaint.

### C. Count III - Breach of Implied Warranties

In Count III of the Complaint, plaintiffs allege breaches of both the Implied Warranty of Merchantability, under 13 Pa. C.S.A. § 2314, and the Implied Warranty of Fitness for a Particular Purpose, under 13 Pa. C.S.A. § 2315.

Under Pennsylvania law, the statute of limitations for breach of warranty claims is four years. 13 Pa. C.S.A. § 2725(a); 42 Pa. C.S.A. § 5525(2); Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 831 (E.D. Pa. 2001). Section 2725(b) provides: "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." 13 Pa. C.S.A. § 2725(b). Moreover, "[a] breach of warranty occurs when tender of delivery is made . . . ." Id. That is, "the statute of limitations will begin to run on the date of sale of the product." Floyd, 159 F. Supp. 2d at 831. The chair lift at issue in this case was purchased and installed in December 2003, and the four year statute of limitations period expired in December 2007. Since plaintiffs filed their Complaint on February 26, 2009, any claims for breach of warranty are time-barred.

Pennsylvania recognizes two exceptions that either extend or toll the statute of limitations, neither of which is applicable in this case. Section 2725(b) extends the limitations period where the warranty "explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." 13 Pa. C.S.A. § 2725(b). In such a situation, "the cause of action accrues when the breach is or should have been discovered." Id. Although United Lift's breach was not discovered until September 2007, this case does not involve a warranty that "explicitly extends to future performance of the goods." Indeed,

"[i]mplied warranties of merchantability and fitness for a particular purpose cannot explicitly extend to future performance." Antz v. GAF Materials Corp., 719 A.2d 758, 760 (Pa. Super. 1998) (citing Nationwide Ins. Co. v. General Motors, 533 Pa. 423, 433–35 (1993)); Int'l Plastics & Equip. Corp. v. HPM, A Taylor's Co., No. 07-CV-1053, 2008 WL 3244070, at *9 (W.D. Pa. Aug. 7, 2008) ("An implied warranty of merchantability is created not by contract language but by operation of law, . . . and implied warranties, by their very nature, cannot 'explicitly' extend to future performance.") (citation omitted).

Apart from the exception in § 2725(b), Pennsylvania's Superior Court has also recognized a form of the repair doctrine, under which "the applicable statute of limitations will be tolled where the evidence reveals that repairs were attempted; representations were made that the repairs would cure the defects; and the complaining party relied upon such representations." Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc., L.P., 577 Pa. 14, 29 n.8 (2004) (citing Amodeo v. Ryan Homes, Inc., 595 A.2d 1232, 1237 (Pa. Super. Ct. 199); Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa. Super. Ct. 1999)). Where a party has attempted repairs but has not represented that the repairs have cured or will cure the defect, the repair doctrine does not toll the statute of limitations. Ranker v. Skyline Corp., 493 A.2d 706, 709 (Pa. Super. Ct. 1985).

United Lift attempted to repair plaintiffs' chair lift but never represented that, with the repairs, the chair lift would be operational. In fact, after plaintiffs contacted United Lift through the assistance of the local television news station, the company expressly informed plaintiffs that it could not guarantee that installation of the new replacement part would actually fix the chair lift. (Id. at 19.) The repair doctrine therefore is inapplicable to this case and does not toll the

9

statute of limitations, which expired in December 2007.

Accordingly, the Court rejects plaintiffs' claims in Count III of the Complaint.

**D.     Count IV - Unfair Trade Practices and Consumer Protection Law**

In Count IV of the Complaint, plaintiffs allege that "[t]he omissions of the defendants jointly, and severally violate the Unfair Trade Practice Act [sic] of Pennsylvania pursuant to 73 PS § 201-1, et sec." (Compl. ¶ 32.)

Pennsylvania's UTPCPL makes it unlawful for individuals or businesses to engage in unfair or deceptive acts or practices. 73 Pa. C.S.A. § 201-3. The purpose of the UTPCPL is to ensure fairness in market transactions and to place sellers and consumers on equal ground. Com. v. Monumental Properties, Inc., 459 Pa. 450, 457–58 (1974); see also Gilmour v. Bohmueller, No. 04-CV-2535, 2005 WL 241181, *11 (E.D. Pa. Jan.1, 2005). The statute is to be liberally interpreted in order to effectuate its purpose. See Monumental Properties, 459 Pa. at 457–58; Cavallini v. Pet City & Supply, 848 A.2d 1002, 1004 (Pa. Super. 2004).

Under the statute, a variety of actions constitute "unfair or deceptive acts or practices." In their proposed findings of fact and conclusions of law, plaintiffs assert that United Lift has committed the unlawful practices described in §§ 201-2(4)(v), (xiv), and (xvi). For the reasons discussed below, the Court finds that United Lift has violated the UTPCPL by engaging in the unlawful trade practices described in §§ 201-2(4)(xiv) and (xvi), but not in § 201-2(4)(v).

Section 201-2(4)(v), which applies to cases of false advertising, prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have." 73 Pa. C.S.A. § 201-2(4)(v); Commonwealth v. Percudani, 844 A.2d 35, 47 (Pa. Commw. Ct. 2004). Plaintiffs argue that United Lift violated this section by

10

"represent[ing] that it was an authorized vendor for Bison Bede Custom Lifts and yet fail[ing] to maintain or be able to obtain repair parts for the [chair lift]." (Pls.' Proposed Conclusions of Law ¶¶ 34, 35.) Plaintiffs' argument fails. Although United Lift did not provide plaintiffs with adequate repair services and was unable to timely obtain a replacement part, these facts do not demonstrate that it was not an authorized vendor for Bison Bede, the manufacturer of the chair lift.

Section 201-2(4)(xiv) makes it unlawful to "[f]ail[] to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." 73 Pa. C.S.A. § 201-2(4)(xiv). Plaintiffs assert that United Lift had a "continual obligation . . . to maintain, and be able to repair the [chair lift pursuant to] the maintenance program agreement." (Pls.' Proposed Conclusions of Law ¶ 36.) As part of the maintenance agreement, United Lift contracted to provide plaintiffs with "unlimited labor and service calls," "Factory trained Service Technicians," "reliable service," "PEACE OF MIND," and "trouble-free operation for the user(s)." (Ex. P-3.) United Lift's maintenance services did not provide plaintiffs with "reliable service" or "trouble-free operation." Plaintiffs' chair lift remained inoperable after four failed attempts to diagnosis and repair it. Accordingly, the Court finds that United Lift is liable to plaintiffs under § 201-2(4)(xiv) of the UTPCPL.

Finally, Section 201-2(4)(xvi) bans "[m]aking repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing." 73 Pa. C.S.A. § 201-2(4)(xvi). "'Under section 201-2(4)(xvi), a plaintiff must show that a defendant agreed in writing to perform a contract with a certain quality and that the work was substandard and inferior.'" Johnson v. Chase Manhattan Bank, USA N.A., No. 07-

CV-526, 2007 WL 2033833, at *7 (E.D. Pa. July 11, 2007) (quoting DiLucido v. Terminix Int'l, Inc., 676 A.2d 1237, 1241 (Pa. Super. 1996)). Despite representing that its maintenance agreement would provide plaintiffs with "reliable service," "PEACE OF MIND," and "trouble-free operation," (Ex. P-3), United Lift failed to repair the chair lift and restore it to operation. The Court therefore finds that United Lift provided plaintiffs with services of a substandard, inferior quality in violation of § 201-2(4)(xvi).

IV.     **Award and Conclusions**

The Court finds that United Lift breached its maintenance agreement with plaintiffs and violated the UTPCPL by committing the unlawful practices described in §§ 201-2(4)(xiv) and (xvi). Plaintiffs therefore are entitled to an award of damages under Counts I and IV of the Complaint.

A.      **Consequential Damages for Breach of Contract**

Pennsylvania law allows for consequential damages in breach of contract cases. See LBL Skysystems (USA), Inc. v. APG-America, Inc., 319 F. Supp. 2d 515, 523-24 (E.D. Pa. 2004); Condo. Ass'n Court of Old Swedes v. Stein-O'Brien, 973 A.2d 475, 483 (Pa. Commw. Ct. 2009). The essential elements of a claim for consequential damages are that defendant had reason to know of the special circumstances causing the loss and that the injury was foreseeable. McDermott v. Party City Corp., 11 F. Supp. 2d 612, 624 (E.D. Pa. 1998); Hadley v. Baxendale, 9 Exch. 341 (1854). Foreseeability is to be determined from the point in time when the contract was formed. McDermott, 11 F.Supp.2d at 624; Hazleton Area Sch. Dist. v. Bosak, 671 A.2d 277, 282 (Pa. Commw. Ct. 1996).

In this case, it should have been foreseeable to United Lift at the time it entered into the

maintenance agreement with plaintiffs that most, if not all, chair lift consumers would be unable to ascend or descend stairs without the assistance of a chair lift. As a merchant in the chair lift sales and repair industry, United Lift also should have known that as a matter of industry practice, chair lift servicers would repair only those chair lifts that they have sold. Thus, it was foreseeable to defendant at the time of contracting that if it failed to repair plaintiffs' chair lift, plaintiffs would not be able to find a vendor willing to repair the chair lift and would be left with no choice but to purchase a new, functional chair lift.

United Lift also should have foreseen that its breach of the maintenance agreement would cause plaintiffs inconvenience and emotional distress. Damages for "emotional distress" and "mental suffering" generally are not recoverable in breach of contract actions. See Kakule v. Progressive Casualty Ins. Co., No. 06-4995, 2007 WL 1810667, at *6 (E.D. Pa. June 20, 2007); Tannenbaum v. UNUM Life Ins. Co. of Am., No. 03-1410, 2005 WL 645237, at *2 (E.D. Pa. Mar. 18, 2005); Mason v. W. Pennsylvania Hospital, 499 Pa. 484, 494 (1982) (Nix, J., concurring and dissenting); Rodgers v. Nationwide Mutual Ins. Co., 496 A.2d 811, 815 (Pa. Super. Ct. 1985). However, Pennsylvania's intermediate appellate courts have recognized two exceptions to this general rule—drawn from Section 353 of the Restatement (Second) of Contracts—that would permit recovery for emotional distress: (1) the breach of contract also caused bodily harm; or (2) "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." See Restatement (Second) of Contracts § 353; Gallagher v. Upper Darby Township, 539 A.2d 463, 467 (Pa. Commw. Ct. 1988); Rodgers v. Nationwide Mutual Ins. Co., 496 A.2d 811, 814-16 (Pa. Super. Ct. 1985); Rittenhouse Regency Affiliates v. Passen, 482 A.2d 1042, 1043 (Pa. Super. Ct. 1984).

Additionally, the Pennsylvania Supreme Court has noted the "possibility . . . that emotional distress damages may be recoverable on a contract where . . . the breach is of such a kind that serious emotional disturbance was a particularly likely result." D'Ambrosio v. Pennsylvania Nat'l Mutual Casualty Ins. Co., 494 Pa. 501, 509 n.5 (1981) (internal quotations omitted); see also Speck v. Finegold, 497 Pa. 77, 80-82 (1981) (per curiam) (reversing Superior Court's denial of plaintiffs' right to recover damages for "mental distress and physical inconvenience" where plaintiffs' third child was born with genetic defects after defendant doctors negligently performed vasectomy and abortion procedures). In a concurring opinion in Speck, Justice Roberts, citing Restatement (Second) of Contracts § 353, concluded that because plaintiffs sought the services of defendant doctors specifically to avoid the possibility of bearing a third child who might inherit the same genetic disease as plaintiffs' elder two children, emotional distress was a "foreseeable risk within the contemplation of the parties." 497 Pa. at 89-90.

Subsequent cases have made clear that in order to recover emotional distress damages, the breach must be particularly likely to result in emotional distress, and courts have denied claims of damages for emotional distress because the circumstances have not been "compelling" or "close to outrageous." See Leo v. State Farm Mutual Automobile Ins. Co., 908 F. Supp. 254, 257 (E.D. Pa. 1995) ("'[C]ircumstances must indeed be compelling' in order to permit [a] claim" for emotional distress damages in a breach of contract action) (quoting Rodgers v. Nationwide Mutual Ins. Co., 496 A.2d 811, 816 (Pa. Super. Ct. 1985)); Harrison v. Nationwide Mutual Fire Ins. Co., 580 F. Supp. 133, 136 (E.D. Pa. 1983) ("[D]efendant's conduct must be something close to outrageous."); Gallagher, 539 A.2d at 467 (denying claim for emotional distress damages

because "the failure to correctly diagnose a sewage blockage problem is not particularly likely to result in mental suffering or emotional distress) (emphasis in original).

Consequential damages for emotional distress are available in this case under both the exceptions listed in Restatement (Second) of Contracts § 353. First, because Melissa Goldstein had no means of leaving her home or even the second floor of her home after the chair lift stopped functioning, she was unable to see her pain specialist and suffered from increased physical pain. See Kutner v. Eastern Airlines, Inc., 514 F. Supp. 553, 559 (E.D. Pa. 1981) ("In order to recover [damages for mental anguish] under the contract theory, plaintiffs must allege physical injury or physical impact."). Second, it is foreseeable that disabled individuals who normally are able to move about freely using a chair lift might become angry, embarrassed, and humiliated after a sudden loss of mobility. Without any reasonable means to ascend or descend the stairs or leave their homes, it is foreseeable that customers in Melissa Goldstein's position would experience feelings of frustration, helplessness, and depression when confronted with a situation where there was no clear indication of when—or even whether—their chair lifts might be repaired. The Court therefore finds that "serious emotional disturbance" was a particularly likely result of United Lift's breach of the maintenance contract. See D'Ambrosio, 494 Pa. at 509 n.5.

Based upon this Court's Findings of Fact and Conclusions of Law, the Court awards consequential damages in the amount of $40,299—$15,299, the cost of the new chair lift, and $25,000 for emotional distress.

### B. Actual Damages Under the UTPCPL

Section 201-9.2(a) of the UTPCPL provides that "[a]ny person who purchases or leases

15

goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of [an unfair or deceptive trade practice], may bring a private action to recover": (1) the greater of one hundred dollars or actual damages; and (2) "costs and reasonable attorney fees." 73 Pa. C.S.A. § 201-9.2(a); Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 399-402 (3d Cir. 2004). Under § 201-9.2(a), the court may, in its discretion, treble actual damages, and "may provide such additional relief as it deems necessary or proper." Id.

The UTPCPL does not specify how "actual damages" should be measured, and the Pennsylvania Supreme Court "has not yet had the occasion to interpret the statutory term." Samuel-Bassett, 357 F.3d at 399. Courts in this district have interpreted "actual damages" under § 201-9.2(a) to include reasonable consequential damages. See Kruger v. Subaru of Am., Inc., 996 F. Supp. 451, 458 (E.D. Pa. 1998); In re Bryant, 111 B.R. 474, 479 (Bankr. E.D. Pa. 1990). In the motor vehicle context, the Pennsylvania Superior Court has utilized the purchase price of the vehicle as a starting point, and has then deducted various sums, such as an amount to reflect plaintiff's usage of the car. Samuel-Bassett, 357 F.3d at 399-401 (citing Stokes v. Gary Barbera Enters., 783 A.2d 296, 298-99 (Pa. Super. Ct. 2001); Young v. Dart, 630 A.2d 22, 26-27 (Pa. Super. Ct. 1993)).

Plaintiffs have not presented any evidence of damages other than the cost of the new chair lift and the emotional distress suffered by Melissa Goldstein. Based upon the evidence presented, the court finds the award of $40,299 in consequential damages provides adequate relief for United Lift's breach of the maintenance agreement and its violation of the UTPCPL. No additional damages will be awarded.

An appropriate order follows.